JAMES B. CLOW & SONS *v.* DOWAGIAC GAS CO.

CORPORATIONS—CONTRACTS—CONSOLIDATION—AUTHORITY OF PRESIDENT.

Liability of défendant company for merchandise furnished by plaintiff to its predecessor corporation, is established by evidence that defendant's president negotiated the transfer of corporate assets to the defendant from its predecessor under an arrangement to pay plaintiff's claim; that defendant accepted the benefit of the president's agreement and purchased the plant and property of its predecessor, including the property furnished by plaintiff; that the president of defendant later promised to pay the obligation to plaintiff, who accepted his proposition.

Error to Cass; Des Voignes, J. Submitted June 29, 1910. (Docket No. 12.) Decided December 7, 1910.

Assumpsit by James B. Clow & Sons, a corporation, against the Dowagiac Gas Company, a Michigan corporation, for goods sold and delivered. Judgment for plaintiff and defendant brings error. Affirmed.

*Coy W. Hendryx,* for appellant.

*Charles E. Sweet,* for appellee.

BLAIR, J. This cause was tried by the court without a jury, and from the finding of facts and the correspondence referred to therein, it appears that the plaintiff is an Illinois corporation doing business in Michigan, selling gas pipe and gas fittings. The defendant is a Michigan corporation with its principal office now at Indianapolis, Ind., and its place of business at Dowagiac, Mich. The defendant company, some time in the year 1907, was organized, and at the time of its organization the stockholders appear to have been, A. Quinn, Indianapolis, 498 shares, N. L. Clawson, Indianapolis, one share, and Fos-

ter G. Shirley, one share.    Afterwards, when negotiations were had with the Dowagiac Gas & Fuel Company, the stockholders appear to have been the said Quinn, Clawson, Shirley, Russell B. Harrison, M. Lafollette, Frank W. Lyle, and C. T. Amsden, the number of shares being 1,000, of which Russell B. Harrison had 800, Chas. T. Amsden, 30, and Frank W. Lyle, 40.    In the spring of 1907, negotiations were had between Russell B. Harrison, president of the defendant company, and Frank W. Lyle, president of the Dowagiac Gas & Fuel Company, whereby the Dowagiac Gas & Fuel Company sold out and transferred its property to the defendant company, the transfer to be made as soon as certain formalities were gone through with.    While the trade was pending between the two presidents, the invoice of pipe and fittings which is the subject-matter of this suit was purchased by the old company, Dowagiac Gas & Fuel Company, from the plaintiff, and on May 1, 1907, John F. Griffin, superintendent, sent a check for $1,104.92 to the plaintiff, drawn on the account of the Dowagiac Gas & Fuel Company.    This check was protested for nonpayment, with reference to which Mr. Lyle wrote the following letter:

"DOWAGIAC GAS AND FUEL COMPANY.
"DOWAGIAC, MICH., May 4, 1907.
"JAS. B. CLOW & SON,
"Chicago.
"*Gentlemen:*
"Referring to the check of this company for $1,104.92, which was returned today, we beg to explain: This company is under contract to sell its plant and business, and your bill is to be paid by the new company.    I so instructed the new superintendent, but he forgot my instructions and sent you a check signed by the old company. Please return the check to us, and the new company will forward you a check including the protest fee, if any.
"Regretting the mistake, we are,
"Yours truly,
"DOWAGIAC GAS & FUEL COMPANY.
"F. W. LYLE, Pt."

Under date of September 26th, a letter was written by

Mr. Harrison to Mr. Wyeth, credit man of plaintiff, in which he said:

"In view of the extension from thirty to sixty days, as agreed upon by Messrs. Clow & Sons, I have agreed to look after and arrange for the payment of the indebtedness on the part of the new company just as soon as this possibly can be arranged after the transfer of the property to the Dowagiac Gas Company."

Afterwards on October 4, 1907, Mr. Harrison wrote to plaintiff, on the letterhead of the Dowagiac Gas Company, signed, "Dowagiac Gas Company, by Russel B. Harrison, President," as follows:

"When the sale of property of the Dowagiac Gas & Fuel Company to the Dowagiac Gas Company is completed the indebtedness of the Dowagiac Gas & Fuel Company to your firm, amounting to about $1,100 will be assumed and taken care of in the manner agreed upon at the recent conference of the writer and Mr. J. C. Clow."

Again, on December 16th, on the letterhead of the defendant, signed, "Russel B. Harrison, President," Mr. Harrison wrote plaintiff:

"I write to say that I have written the general manager at Dowagiac, requesting him to send check for all the funds that can be spared for the purpose of applying same on your account. This check will be in your hands before the end of the week."

Following these conferences and these two letters, with others, Mr. Wyeth called on the defendant at Dowagiac, where he interviewed Mr. Griffin, superintendent, and Mr. Lyle, director, who both insisted upon his talking over the telephone with Mr. Harrison, and, after this talk, the check for $150, signed by the defendant company, was given to Mr. Wyeth; and on December 23d Mr. Harrison wrote to Mr. Wyeth, referring to this conference by telephone and the payment of the check for $150. On January 9, 1908, Mr. Harrison wrote to J. C. Clow, secretary of plaintiff, as follows:

"In view of your suggestion that you do not wish to work

any hardship to the company, I suggest the following plan, and, if accepted, will insist upon its being carried out, a payment of $150 between the 10th and 15th of each month until the indebtedness is entirely paid. The first payment to be made upon the acceptance of this proposition, interest at the rate of 6 per cent. to be paid on account."

This letter was followed by one from Mr. Harrison on January 13, 1908, in which he said:

"I write to make inquiry if my proposition is satisfactory. I am led to this inquiry as I have received from the Dowagiac Gas Co. a check for $150 which I desire to forward to you promptly, if the proposition is satisfactory. If as you say, you desire to work no hardship to the Dowagiac Gas Co., all you have to do is to accept the proposition and payments will start immediately."

To this, reply was made by Mr. Clow on behalf of the plaintiff, accepting the proposition, and on January 15th, two days later, Mr. Harrison wrote the plaintiff a letter which contained these words:

"As we appear to have reached a complete and thoroughly satisfactory understanding in this matter, I hasten to place in your hands, on behalf of the company, check No. 9 of the Dowagiac Gas Co. on the City Bank of Dowagiac, payable to the order of James B. Clow & Sons for $150. Kindly acknowledge receipt."

This payment of $150 was received by the plaintiff, since which time no further payments have been made. The balance unpaid, with interest from May 10, 1907, at 6 per cent., amounts to $894.36. It is undisputed that Russell B. Harrison, who was the owner of four-fifths of the capital stock of the defendant company, was president of the defendant company, and managed its affairs during all the time the letters and conferences between the parties to this suit, as well as between the two gas companies, were had; and that the business of the Dowagiac Gas Company, the defendant, was managed by Russell B. Harrison, its president; and that Russell B. Harrison, during negotiations for the purchase of the plant of the old com-

pany, agreed with Mr. Lyle, president of the old company, to pay plaintiff the bill for which this suit is brought. Precisely when the transfer between the gas companies was completed, by turning over the pipe in question and other property, does not appear, but the correspondence shows that it was, at least, later than October 4, 1907. The trial court found that plaintiff was entitled to recover, and defendant has brought the record to this court for review.

We are of the opinion that the court did not err in his conclusion of law. The defendant company, having accepted the fruits of the agreement negotiated on its behalf by its president to purchase the plant of its predecessor, including the pipe, became bound by the president's agreement that defendant would pay for it and assumed the indebtedness as its own obligation in consideration of the delivery of the pipe. The defendant having assumed this obligation, its president was authorized to make the agreement in question with plaintiff, and plaintiff, having accepted defendant's obligation in place of the obligation of its predecessor, was entitled to maintain this action against defendant. 2 Thompson on Corporations (2d Ed.), § 2020; *Gould* v. *Gould & Co.*, 134 Mich. 515 (96 N. W. 576, 104 Am. St. Rep. 624).

The judgment is affirmed.

BIRD, C. J., and MOORE, OSTRANDER, and BROOKE, JJ., concurred.